McHugh, J.
I.Background
Plaintiff John H. TenPas, M.D. (‘TenPas”) brought this action against Lexington Eye Associates (“LEA”), several individual physicians (hereafter collectively known as “the physicians”) and Burton Williams (“Williams") alleging, in summary, that TenPas was terminated from his employment by LEA without cause and that LEA and physicians have not paid TenPas the fair value of his share of the business. Defendant physicians and LEA move for partial summary judgment pursuant to Mass.R.Civ.P. 56(c) with respect to Counts I, II, III, IV, V, VI, VII, X, XI, XII and XXIV of the complaint on the grounds that there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. TenPas opposes the motion on grounds that there are disputed issues of material fact that prevent judgment from entering in favor of the physicians and LEA as a matter of law.
II.UNDISPUTED FACTS
TenPas is a physician and surgeon. The physicians and TenPas are co-equal stockholders in LEA. LEA’s principal places of business are in Lexington, Arlington and Concord, Massachusetts. LEA is a closely held and managed corporation; the sole stockholders, directors, and officers are TenPas and the physicians. TenPas, the physicians (excluding John D. Wright, M.D. (“Wright")), and Williams are the trustees of 99 Waltham Street Trust, which owns the real estate in Arlington, Lexington and Concord on which LEA conducts its medical practice. TenPas and the physicians are the beneficiaries of the Trust.
TenPas had an Employment Agreement with LEA providing that he would “be entitled to receive the same compensation as that to which other stockholder-employees of [LEA] are then entitled as outlined in Schedule A.” Schedule A provided for an “Incentive Bonus" that was “equal to the currently applicable percentage as determined by the Board of Directors, of the income generated by the Principal in excess of the Base Income.” Schedule A also provided for a “Bonus Pool” consisting of “the amount determined by the Board of Directors to be distributable as bonuses after the payment of Base Salaries, etc.”
In August or September 1986, the physicians voted to restrict TenPas’s practice to LEA’s Lexington and Arlington facilities and to bar him from the Concord facilities. TenPas objected to this decision.
In December 1989, the physicians and TenPas had a meeting in which all save TenPas voted to revise the compensation formula. Defendant Harvey H. Slansky, M.D. (“Slansky”) proposed the revision because he felt that there was too much competition among the physicians. Defendant William P. Boger III, M.D. (“Boger”) testified in his deposition that the December 1989 meeting was intended to deal with competitiveness among the doctors by changing the bonus salary structure, the effect of which was to even out the compensation for the four top earners. After TenPas’s termination, this new compensation plan was abandoned and LEA returned to the former plan.
In the years 1984-1989, the four highest earners at LEA were Slansky, Tolpin, Vinger and TenPas. TenPas was never the highest earner at LEA although during the years 1986-1989, he was the second-highest earner.
The physicians voted to terminate TenPas during a meeting held on February 12, 1991. TenPas’s termination was effective February 15, 1991. Thereafter, contrary to past practice, LEA did not pay TenPas’s 1991 dues for professional association memberships and his hospital staff fees and did not inform TenPas of the nonpayment. On February 19, 1991, physicians and LEA’s counsel received notice of where TenPas would be practicing in the future and of his new phone number.
III.DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion *138 must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
IV. DISCUSSION
A.Counts I and II
In Count I of his complaint, TenPas alleges that the physicians breached their obligations to him under his employment contract by wrongfully barring him from the Concord facilities thereby causing him to lose patients and damaging his relations with referral physicians. Article IX of the Employment Agreement states in part:
“. . . the times and places at which such work is to be performed . . . shall be consistent with the standards and requirements imposed on other professional employees of the Employer ...”
Count II is premised on the same allegations as Count I and asserts a claim for breach of fiduciary duty.
The statute of limitations pertaining to contracts states:
Actions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied . . . shall ... be commenced only within six years next after the cause of action accrues.
G.L.c. 260, §2. The meeting at which the physicians decided to restrict TenPas from practicing at the Concord facility occurred in August or September 1986. TenPas brought this action in March 1991, within the period of limitations prescribed by c. 260, §2.
The physicians and LEA nevertheless argue that the court should apply to Counts I and II the three-year statute of limitations applicable to tort claims. G.L.c. 260, §2A. For that argument, they rely on Houle v. Low, 407 Mass. 810 (1990), in which the Court held that where defendant shareholders in an ophthalmology practice allegedly breached their fiduciary duty to plaintiff shareholder by voting not to invite him to participate in a new venture, the three-year tort statute of limitations applied. Id. at 813.
The plaintiff in Houle, however, did not sue under any express contract. In Kirley v. Kirley, 25 Mass.App.Ct. 651, 652-59 (1988), the Court held that a corporate “freeze-out” claim sounds in tort for purposes of the statute of limitations. Continuing, the court stated, albeit in dictum, that a “freeze-out” claim grounded on a breach of an express contract would be subject to the six-year statute applicable to contracts. Id. at 654.
Here, TenPas and the physicians had an express Employment Agreement that TenPas claims was breached when the physicians barred him from the Concord facility. An alleged breach of that contract lies at the heart of Counts I and II. Accordingly, the six-year statute of limitations applies and the action was commenced in timely fashion.
B. Count III
Count III of TenPas’s complaint alleges that the physicians and LEA breached their contractual obligation to treat TenPas with the utmost fairness by voting to impose a compensation formula that was not based on production of income and had no regard for the efforts or productivity of the recipients.
TenPas’s Employment Agreement stated that Ten: Pas would “be entitled to receive the same compensation as that to which other stockholder-employees of the Employer are then entitled as outlined in Schedule A.” Under the contract, the Board of Directors had the power to determine the amount available for an “Incentive Bonus" and amounts to be placed in the “Bonus Pool” described in Schedule A. The Employment Agreement does not provide for compensation based on effort or productivity but rather on a percentage to be determined by the Board of Directors.
On their face, then, the terms of the contractual arrangement under which TenPas was working gave the Directors the power to do precisely what they did. TenPas has not set forth facts that show the way in which the physicians and LEA breached that contract. TenPas continued to receive compensation in the same manner as the other stockholders-employees under the new formula. It is undisputed that the vote taken to change the bonus formula was taken by all of LEA’s directors and the effect of the vote was to impose a bonus formula under which the four highest earners were treated the same.[2]
The record, in sum, does not give rise to a genuine issue of material fact on the question of whether the physicians’ actions breached the covenant of good faith and fair dealing, see Anthony's Pier Four. Inc. v. HBC Associates, 411 Mass. 451, 471-72 (1991),[3] or violated the fiduciary obligation they undeniably owed TenPas. Although alteration of the compensation formula reduced the income TenPas and another received and increased the income of the other two physicians, that alteration cannot by any stretch be said to have “destroy[ed] or injur[ed TenPas’s] right... to receive the fruits of [a] contract,” id., that expressly placed discretionary decisions about compensation in the hands of the Board. Moreover, although the leveling of incomes had the probable effect of raising slightly the salaries of two of the three defendants who voted for it, the leveling process had the simultaneous probable effect of lowering the salary of the third.
C. Count IV
Count IV asserts that by adopting the new compensation formula, the physicians breached their fiduciary obligation to TenPas. Clearly, stockholders in a closely held corporation are held to a “standard of fiduciary duty more exacting than the traditional good *139 faith and inherent fairness standard.” Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 595 (1975). Under the “more exacting” standard, stockholders of a close corporation owe each other a duty of “utmost good faith and loyalty.” Id. at 593, quoting Cardullo v. Landau, 329 Mass. 5, 8 (1952).
The fiduciary obligations shareholders have to each other does not prohibit each and every action by a majority that may have the effect of injuring a minority. See Leader v. Hycor, Inc., 395 Mass. 215, 222 (1985). The test to be applied when minority shareholders claim a breach of the majority’s obligation is “whether the controlling group can demonstrate a legitimate business purpose for its action.” Wilkes v. Springside Nursing Home, Inc., 370 Mass. 842, 851 (1976). In Wilkes, for example, the court stated that the majority shareholders must be given discretion in establishing the salaries of corporate officers. Id. Nevertheless the majority “may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation.” Donahue v. Rodd Electrotype Co. of New England, Inc., supra, 367 Mass. at 593.
The undisputed facts show that the compensation formula affected each of the four top earning physicians of which TenPas was one. TenPas, however, was never the top earner and therefore the new formula did not adversely affect only him. In addition, TenPas has not shown in what way he was damaged by the change to the formula apart from reduction to or elimination of the bonus pool from which the Directors could have made discretionary distributions annually.
More important, the physicians and LEA have offered reduction of competition among the physicians as the legitimate business purpose for the majority’s decision to change the compensation formula. At least in an enterprise that derives some benefits from cooperation, that is a legitimate business purpose. That the measure may have been aimed at what the others perceived as TenPas’s overly competitive approach to the practice does not change the legitimacy of the desire to reduce competition. Rarely, if ever, will measures designed to reduce competition or to breed collegiality affect all members of an enterprise in precisely the same way.
• In the last analysis, the Board of Directors of LEA had the contractual right to change the compensation formula. The physicians have demonstrated a legitimate business purpose for the change, namely a desire to reduce competition among the physicians. Although the action may have reduced TenPas’s compensation it also reduced the compensation for the top earner at LEA. The majority stockholders did not appear to obtain “special advantages and disproportionate benefit” at TenPas’s expense. See Donahue v. Rodd Electrotype Co. of New England, supra, 367 Mass. at 598. The record therefore simply does not support TenPas’s assertion that there is a genuine issue of material fact on whether the defendants’ decision was motivated by their “greed,” i.e., by their collective desire to increase their own compensation at TenPas’s expense.
D. Counts V, VI and VII, X, XI, XII
TenPas alleges that the physicians and/or staff at LEA wrongfully and falsely informed TenPas’s patients that TenPas was no longer affiliated with LEA, that he had retired or that his whereabouts were unknown but that other of the individual defendant physicians would be available to treat such patients. On the basis of those assertions, CountV claims deceit and misrepresentation, Count VI claims slander and tortious interference with advantageous contractual relationships, and Count VII claims breach of contract.
TenPas also alleges that since February 15, 1991, the physicians and/or staff of LEA wrongfully, falsely and deliberately told patients that LEA did not know TenPas’s whereabouts and that he had perhaps retired although they knew TenPas had continued his practice in Arlington. On the basis of these assertions, Count X alleges slander, Count X3 alleges that defendants breached their contract with TenPas, and Count XII alleges a breach of fiduciary obligations.
The difficulty with TenPas’s claims is absence of any proper evidence to support the proposition that the statements were in fact made. The defendants, in their affidavit, deny making or authorizing any of the alleged statements. Although TenPas has asserted in his deposition that patients were told certain things by the physicians and/or staff at LEA, his statements concerning what others heard are hearsay. Indeed, hearsay alone is what TenPas has offered in support of the claims found in Counts V, VI, VII, X, XI and XII.
Hearsay cannot defeat another party’s proper motion for summary judgment. McKenzie v. Brigham & Women’s Hosp., 405 Mass. 432, 437-38 (1989) (deposition testimony which would be inadmissible at trial is unacceptable for purposes of a summary judgment motion). To defeat a proper motion for summary judgment, factual allegations must be based on personal knowledge. Statements based on hearsay or made on information and belief are insufficient. Whirty v. Lynch, 27 Mass.App.Ct. 498, 500 (1989); Madsen v. Erwin, 395 Mass. 715, 721 (1985).
Whirty is an example of the principle. There, plaintiff brought a claim for defamation. In an affidavit, the defendant denied making the statements plaintiff claimed he had made. Whirty v. Lynch, supra, 27 Mass.App.Ct. at 499. The plaintiff alleged in his affidavit that the defendant had contacted personnel of certain newspapers and made the defamatory statements. Id. Plaintiff, however, presented no affidavits from anyone to whom defendant allegedly made the statements and plaintiff himself did not claim to have overheard them. As a result, there was no non-hearsay basis in the record for plaintiffs contentions and his *140 affidavit was not enough to stave off defendant’s motion for summary judgment. Id. at 500.
As in Whirty, there is no non-hearsay basis in the record for the allegations TenPas has made. Accordingly summary judgment for defendants on the claims contained in Counts V, VI, VII, X, XI and XII of the complaint is appropriate.
E. Count XXIV
Finally, for present purposes, TenPas claims in Count XXIV of the complaint that the physicians and LEA violated G.L.c. 93A, §11 by engaging in unfair and deceptive business practices. The claims asserted are based on those asserted in Counts I-XVIII. As summary judgment has been allowed for the defendants on counts III — VTI and X-XII, examination of the allegations contained in counts I, II, VIII, IX, XIII-XVIII is required to determine whether a genuine issue of material fact exists with respect to claim under G.L.c. 93A, §11.
As stated earlier, TenPas claims in Counts I and II that the physicians and LEA wrongfully barred him from the Concord facility in 1986. In Counts VIII and IX, TenPas claims that the physicians and LEA wrongfully terminated his employment. In counts XIII-XV, TenPas claims that while he was still employed at LEA, the defendants wrongfully failed to pay certain dues to associations and hospitals and in Counts XVI-XVIII, TenPas claims that the physicians and LEA failed to account for and misappropriated certain monies, income and assets to which TenPas was and is entitled as a shareholder and employee.
As a matter of law, G.L.c. 93A, §11 does not apply to disputes arising out of the employment relationship. Weeks v. Harbor National Bank, 388 Mass. 141, 144 (1983); Manning v. Zuckerman, 388 Mass. 8, 15 (1983). “The development of [G.L.c. 93A, §11] suggests that the unfair or deceptive acts or practices prohibited are those that may arise in dealings between discrete, independent business entities and not those that may occur within a single company.” Id. at 12.
The unfair or deceptive acts with which c. 93A is concerned therefore are those committed in marketplace transactions and not those arising out of the relationship between an employee and his or her employer. Id. at 13. As a result, employment agreements and the execution thereof are not considered “trade” or “commerce” for the purposes of G.L.c. 93A, §11. Id.; Dorfman v. TDA Industries, Inc., 16 Mass.App.Ct. 714, 720 (1983). Nor does c. 93A, §11 apply to “intra-enterprise” disputes. Saint Louis v. Baystate Medical Center, Inc., 30 Mass.App.Ct. 393, 404 (1991) (c. 93A, §11 inapplicable to dispute between hospital and corporation from which it obtained anesthesiology services). The statute is inapplicable to disputes that are principally private grievances between two shareholders in a close corporation where those disputes did not occur in the conduct of trade or commerce. Zimmerman v. Bogoff, 402 Mass. 650, 662-63 (1988) (claim under c. 93A, §11 disallowed where one shareholder in close corporation breached his fiduciary duty, withheld certain monies and diverted business from the corporation causing failure of the other shareholder's corporation). Private transactions between members of the same partnership that do not adversely affect the interests of others are not actionable under c. 93A, §11. Riseman v. Orion Research Inc., 394 Mass. 311, 313-14 (1985). Finally, c. 93A, §11 does not cover a shareholder’s claims of wrongdoing in the internal governance of a corporation. Id.
As stated, TenPas claims that the physicians and LEA wrongfully barred him from the Concord facility in 1986. (Counts I and II), wrongfully terminated his employment (Counts VIII and IX), and wrongfully failed to pay his dues to associations and hospitals (Counts XIII-XV). All of those claims clearly arise out of TenPas’s employment relationship with the physicians and LEA and thus G.L.c. 93A, §11 is inapplicable to them.
TenPas also claims that the physicians and LEA failed to account for and misappropriated certain monies, income and assets to which TenPas is entitled as a shareholder and employee (counts XVI-XVII). Again, c. 93A, §11 is not applicable to TenPas’s claims as an employee because the dispute arises out of the employment relationship. See Weeks v. Harbor National Bank, supra, 388 Mass. at 144. In addition, TenPas’s claims as a shareholder do not give rise to an action under G.L.c. 93A, §11. The dispute between TenPas and the other shareholder physicians and LEA is a private grievance that did not occur in the conduct of trade or commerce under G. L. c. 93A, §11. The dispute between TenPas and defendants never became part of LEA’s commercial activities with regard to consumers, competitors or other business persons. See Zimmerman v. Bogoff, supra, 402 Mass. at 663; Dorfman v. TDA Industries. Inc., supra 16 Mass.App.Ct. at 721.
Accordingly, G.L.c. 93A, §11 is inapplicable to all of the counts of the complaint on which the claim is based and summary judgment for defendants on Count XXIV is therefore appropriate.
ORDER
Based on the foregoing, defendant’s motion for summary judgment is DENIED as to Counts I and II of the complaint and ALLOWED as to counts III, IV, V, VI, VII, X, XI, XII and XXIV.

 The four highest earners from 1984-1989 were Slansky, Tolpin, Vinger and Tenpas. Slansky was the highest earner for 1984-1988. Vinger was the highest earner in 1989.

 The physicians argued that the implied covenant of good faith and fair dealing was not a part of Tenpas’s employment agreement. I need not resolve that question because on this record, even if it was, the physicians did not breach it.