van Gestel, J.
This matter comes before the Court on motions to dismiss filed by all of the defendants. The case is a member’s derivative action brought pursuant to Mass.R.Civ.P. Rule 23.1 by a policyholder, Loretta M. Harhen (“Harhen”), of the John Hancock Mutual Life Insurance Company (“Hancock”).
BACKGROUND
Hancock is a Massachusetts mutual insurance company and Harhen, at all times material, has been a policyholder. In April of 1996 the plaintiff made a member’s demand on the board of directors of Hancock, seeking certain action relating to the activities of the company’s in-house lobbyist. A specially appointed committee of the board — consisting of two outside directors, not named in the suit- — recommended that the company decline to take the action demanded, and this suit followed.
Basically, the plaintiff demanded that the Hancock board direct the company to sue three of its directors and two former executive employees to recover for Hancock the amount of civil fines paid by it and sums advanced as indemnification to the two executive employees in connection with their responses to investigations and a prosecution resulting from the lobbying matters. The three directors named in the complaint are accused by the plaintiff of waste of corporate assets and failure to effectively supervise company employees. The executive employees are charged with having caused the expenditures that constituted the alleged corporate waste. This derivative suit was filed on March 21, 1997, nearly four years after the lobbying activities were exposed in the Boston press.
DISCUSSION
A motion to dismiss tests the legal sufficiency of the complaint. It admits, for purposes of the motion, all well-pleaded allegations of the complaint. Cooper v. Pate 378 U.S. 546 (1964); Nader v. Citron, 372 Mass. 96, 97-98 (1977). A complaint should notbe dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which could entitle her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). However, in reviewing a complaint, even on a motion to dismiss, special rules of pleading, such as those calling for specificity or particularity on certain issues, e.g., Rule 23.1, cannot be ignored. In re Kauffman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973). The motions before the Court will be subjected to those tests.
A Massachusetts mutual insurance company is an entity permitted and created by law for the purpose of operating a business. The authority to manage such an entity’s affairs is vested in a duly designated board of directors, guided and controlled by a set of by-laws, all within the parameters of the General and sometimes special laws of the Commonwealth. The persons *599 best suited to make judgments on the conduct of the business of these kinds of entities are the members of the board of directors who are charged with the task. The directors are informed about and know the company’s operations, have full access to the books and records of its business and affairs, are selected for their own general and diverse knowledge and understanding of business matters, and they are controlled by the law (statutes, regulations, common law, equitable principles and company by-laws) in their actions. Clearly, it must be a rare occasion when a judge intrudes in the management of a corporation’s internal affairs.
When a shareholder, or, as here, a member,[1] not herself a director or officer, and not subject to any by-law or fiduciary obligation to the company or shown to know anything whatsoever qbout its affairs, demands action by the board, and that action is refused, a Court is ill-equipped to burst into the boardroom and make decisions as to what action should be taken in the best interests of the company. “Massachusetts has always recognized the need for courts to abstain from interfering in business judgments.” Houle v. Low, 407 Mass. 810, 824 (1990). “Intelligent and honest men differ upon questions of business policy. It is not always best to insist on one’s rights . . .” S. Solomont & Sons Trust v. New England Theatres Operating Corp., 326 Mass. 99, 112 (1950). See also Pomerantz v. Clark, 101 F.Sup. 341, 346 (D.Mass. 1951). Only when it is glaringly apparent that the boards’ action is in violation of the law or contrary to public policy, or when its actions are patently harmful to the company and are dominated or dictated by a majority lacking independence or infected with an undue bias on the subject at hand, ought a Court inject itself into the process of deciding what may be best for the company.
Here, the plaintiff has made a demand that, after investigation by and recommendation of a subcommittee of two independent directors,[2] was refused by the board. The demand, among other things, sought to have the board direct the company to bring suit against three of its fellow board members and two former executive employees. The underlying subject of the demand related to the supervision of the activities of Hancock’s principal in-house lobbyist and indemnification payments made to him, and his supervisor, in connection with their responses to State and Federal investigations of those activities. Also included in the demand were concerns related to the recoupment of civil fines paid by the company to the State and Federal regulators because of excesses in the lobbying activities.
Houle v. Low, supra, 407 Mass. 810, establishes the principle that in Massachusetts a corporation receiving a demand for action from a shareholder or member such as that here in issue may designate a special committee to respond thereto.[3] Houle dealt with a closely-held corporation in which all of the directors— including the one making the demand — were physician-employees of a professional corporation. Five out of seven of the Houle directors were charged with fraud, violation of their fiduciary duties and improper acquisition of a corporate opportunity. One of the Houle directors — not herself named as a defendant, and the youngest and least senior physician in the practice group — was designated by the accused-others as a committee of one to investigate Dr. Houle’s demand and recommend a response. The Supreme Judicial Court, after canvassing the varied law of other jurisdictions,[4] ruled that, under the circumstances presented, a court must insure that the designated committee was sufficiently independent and unbiased, and that the investigation it undertook was thorough and proper, before accepting the business judgment of the board to refuse the demand. Id. at 820-25.
This Court does not read Houle as being limited in its reach only to closely-held corporations. Id. at 825, n. 11. At the same time, this Court perceives Houle's mandate to conduct a preliminary hearing to study the make-up of the committee and what it may have reviewed, id. at 824, only to apply when the allegations in the complaint demonstrate with specificity that the committee lacked independence, or was biased, and that its review was inappropriately sparse. A Court must begin with a presumption of propriety in the board’s action in the absence of clear allegations to the contrary. In other words, the Court must undertake any intrusion into corporate governance with care and rarity, Mass.R.Civ.P. Rule 23.1, and a rich history of the common law in this jurisdiction, require no less.
Since the derivative suit is essentially two causes of action in one — a suit against the third-party wrongdoer and a second suit against the corporate directors for their failure to sue — plaintiff must first demonstrate that the directors have wrongfully declined to proceed against the wrongdoer before he can press his claim ... The business judgment rule can thus bar a derivative suit entirely' upon a showing that the directors’ refusal to sue was in good faith.
Evangelist v. Fidelity Management & Research Co., 554 F.Sup. 87, 91 (D.Mass. 1982).
Rule 23.1 includes a pre-suit demand requirement that, unlike courts in Delaware, is strongly enforced in Massachusetts. Woodcock v. American Investment Co., 376 Mass. 169 (1978); Datz v. Keller, 347 Mass. 766 (1964); Palley v. Baird, 356 Mass. 737 (1970); S. Solomont & Sons Trust v. New England Theatres Operating Corp., supra, 326 Mass. 99; Bartlett v. New York, N.H. & H.R.R., 221 Mass. 530 (1915). There is a purpose for this enforcement. It is presumed that a board receiving a shareholder’s demand will respond with valid and appropriate business judgment, taking such action as may be in the best interests of the company. The demand in Massachusetts is not treated *600 as some idle procedure, devoid of meaning, all form and no substance. The board is not expected to respond to the demand like a herd of sheep, otherwise to have its judgment ignored and the management of the company turned over to the defendant or the Court.
It [the demand requirement] is not a technical rule of pleading, but one of substantive right. If the majority of the board of directors of a corporation are incorruptible, free of collusion with wrongdoers and ready to act for the best interests of the corporation, there is no reason why an individual stockholder should be permitted to involve the corporation in lawsuits . . . “It would be contrary to the fundamental principles of corporate organization to hold that a single shareholder can at any time launch the corporation into litigation to obtain from another what he deems to be due it, or to prevent methods of management which he thinks unwise,” unless a plaintiff... avers the truth of the essential facts respecting the directors which show either that they have refused to act when asked to act or that it would be useless to make application to them. There is no reason why litigation should be undertaken by him for its benefit.
Bartlett v. New York, N.H. & H.R.R., supra, 221 Mass. at 538.
Rule 23.1 also has within it requirements for precision in pleading that reach well beyond Rule 8’s simple notice requirements for a short and plain statement of facts.[5] Not only must the complaint be verified by oath to prevent strike suits, there must be contemporaneous ownership of stock to protect against champertous litigation. See, e.g., In the matter of Penn. Central Transp. Co., 341 F.Sup. 845, 846 (E.D. Pa. 1972). Further, the complaint must allege “with particularity” the efforts made by the plaintiff to obtain the action she desires from the the directors and the shareholders or members and her reasons for failing to seek or obtain that action.
Case law, as well, suggests heightened pleading standards in these kinds of suits. “[T]he stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case. Indeed, if the [Rule 23.1) requirement could be met otherwise it would be meaningless.” Heit v. Baird, 576 F.2d 1157. 1162 n. 5 (1st Cir. 1977).
[A] stockholder’s derivative action, whether involving corporate refusal to bring antitrust suits or some other controversial decision concerning the conduct of corporate affairs, can be maintained only if the stockholder shall allege and prove that the directors of the corporation are personally involved or interested in the alleged wrongdoing in a way calculated to impair their exercise of business judgment on behalf of the corporation, or that their refusal to sue reflects bad faith or breach of trust in some other way.
(Emphasis added.) Ash v. International Business Machines, Inc., 353 F.2d 491, 493 (3d Cir. 1965).
In this case just three of the approximately 20 directors on the Hancock board at the time of the demand have been named as defendants, along with the two former executive employees. The committee that investigated and advised the full board consisted of two outside directors, neither named as defendants — Mr. Fish and Mr. Booth. As noted earlier, the situation at the heart of the plaintiffs concern was the activities of Hancock’s in-house lobbyist[6] over a period of time culminating in May of 1993. The subject of the Hancock lobbying activities provided fodder for and was featured in front-page headline stories in the major newspaper in the company’s home City and State[7] — The Boston Globe. The matter was investigated by the Massachusetts State Ethics Commission and the United States Attorney’s Office in Boston. On March 21 and 22, 1994 highly publicized resolutions were made by Hancock with both the State and Federal investigatory entities. Substantive and significant internal changes in Hancock’s Government Relations Department — its in-house lobbyists — were agreed to with the regulators and promptly implemented by the company. Criminal charges were filed against the in-house lobbyist,[8] with immense accompanying press coverage; he was transferred out of his lobbying position; and the other corporate officer,[9] who was Sawyer’s immediate superior, accepted early retirement.[10] All of the foregoing was accomplished more than two years before the plaintiff demanded that the Hancock board take action in response to the lobbying situation. Significantly, the lobbying activities of Mr. Sawyer ended nearly three full years before the April 1996 demand. See Complaint, para. 53.
Unless it can be shown that each available internal organ is biased, or refused to hear evidence, or acted unreasonably, or in some other manner was disqualified, the courts of Massachusetts will not act at the suit of a minority member. He is remitted to the directors or, if they are disqualified, to the members as a body as the appropriate tribunal to decide not only if a derivative claim has merit but if the corporate welfare is best promoted by suing upon it.
Pomerantz v. Clark, supra, 101 F.Sup. at 344.
Under the circumstances recited above, this Court finds the complaint — verbose though it may be— woefully lacking in aflegational specificity on the key issues of the Hancock special committee’s degree of independence[11] or bias[12] to warrant the kind of interference with corporate management that is postulated in Houle. Indeed, the failure of candor in acknowledging the extensive actions taken by the company in response to the State and Federal investigations, long before the plaintiffs demand in 1996, casts a suspicious pall over the motivation behind this lawsuit. Furthermore, the law in Massachusetts requires the *601 additional pre-suit step of demand on the other shareholders or members[13] if the board is disqualified or improperly fails to act. S. Solomont & Sons Trust v. New England Theatres Operating Corp., supra, 326 Mass. at 113; Palley v. Baird, 356 Mass. 737 (1970); Smith and Zobel, Rules Practice, 7 M.P.S. Sec. 23.1.5.
The mere fact that a corporation is a large one with scattered members to whom it would be expensive to send proxies and whose support it would be difficult to command even in a just cause has not been recognized in Massachusetts as a ground for not resorting to the body of the members.
Pomerantz v. Clark, supra, 101 F.Sup. at 344 (a derivative action against John Hancock Mutual Life Insurance Company).
Given the current insipid state of the key allegations in the complaint, this Court defers totally to the business judgment of the Hancock subcommittee and the Hancock board on all issues presented in the plaintiffs demand.
The Court orders this case dismissed. This dismissal, however, is without prejudice to seeking leave to amend and refile, if, within the strictures of Mass.R.Civ.P. Rule 11, the necessary allegations can be proffered.[14]
ORDER
For the reasons stated above the plaintiffs complaint shall be dismissed.

 The defendant Sawyer raises interesting, and not frivolous, issues regarding the standing of the plaintiff to bring this action. Those issues are not the subject of this decision. They do, however, lend support to the Court’s wariness over acting precipitously as a one-man board of directors in this case.

 The directors that constituted the committee consisted of Lawrence K. Fish, Chief Executive Officer of Citizens’ Bank, and I. MacAllister Booth, retired Chairman, President and Chief Executive Officer of Polaroid Corporation, neither of whom was ever an employee of Hancock.

 Even those who are targets of the demand can participate in the creation of the committee. Id., at 820.

 Id. at 814-19.

 Even the Rule 8 mandate, otherwise, seems to have been almost totally forgotten by the drafters of the 45-page, 90-section complaint in issue here. The Court’s estimate sets a word count for the complaint at about 11,700.

 At oral argument on the motions to dismiss, upon questioning by the Court, counsel for the plaintiff readily conceded that it was appropriate for a highly regulated company like Hancock to utilize the services of lobbyists to advocate on matters affecting its business. See also United States v. Sawyer, 85 F.3d 713, 731 n. 15 (1st Cir. 1997).

 The plaintiff, herself a resident of the former Middlesex County, resides in the Boston metropolitain area.

 See United States v. Sawyer, 878 F.Sup. 279 (D.Mass. 1995), and the reversal of Mr. Sawyer’s convictions in United States v. Sawyer, supra, 85 F.3d 713.

 No criminal charges or civil complaints were ever lodged against this man.

 Much of this information, particularly that relating to the company’s corrective actions, is not revealed in the complaint. It is, however, well known to the Court because of its prominence in the community press and its inclusion in the public records of the State Ethics Commission and the Federal Court — both the U.S. District Court in Boston and the First Circuit Court of Appeals. The defendants urge the Court to consider the material without converting the motions into Rule 56 motions. See, e.g, Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996). The plaintiff objects, saying that she needs discovery under Rule 56(f) before proceeding. The Court here, by its mention of this beyond-the-record information, is not converting the present motions to dismiss into motions for summary judgment. Rather, it points to facts known by everyone, the plaintiff included, in the assessment of the case and the Court’s obligations at this time. It hardly seems appropriate to proceed as if none of this information was available. The courtroom is no place to play hide-and-seek with known facts.

 There must be much more than generalized allegations of board membership, votes on issues raised in the demand, and participation in approving the payment of by-law authorized indemnification to trigger action under Houle. See Complaint, paras. 22, 23, 35 and 37.

 It is nowhere near enough to simply allege that Hancock purchased long-term bonds in Polaroid Corporation to demonstrate bias on the part of Mr. Booth. See Complaint, para. 22.

 This is nowhere alleged or sought to be excused in the complaint.

 Additionally, the motions raise Rule 12(b)6) issues relating to the statute of limitations and the effect of the Hancock by-law provisions. The defendant Sawyer also challenges the plaintiffs standing to sue and her right to raise issues about matters that happened after her demand was made. These issues are far from frivolous. Nevertheless, this Court finds those points too far beyond the four corners of the complaint to be addressed on a motion to dismiss. Thus, they are reserved, without decision, for another day — if any there be.