718 A.2d 254 (1998)
315 N.J. Super. 323
In re PSE & G SHAREHOLDER LITIGATION.
This Opinion Relates to Stricklin (C-160-96) and Greenberg (C-188-96) Plaintiffs.
Superior Court of New Jersey, Chancery Division, Essex County.
Decided April 30, 1998.
*255 Mark C. Rifkin and Donald Alexander, Ardmore, PA, for plaintiff Gloria E. Stricklin (Greenfield & Rifkin, attorneys).
Peter S. Pearlman (Cohn, Lifland, Pearlman, Herrmann & Knopf, attorneys), Saddle Brook, Stephen I. Whinston, (Berger & Montague, attorneys), Philadelphia, PA, for plaintiff Dr. Steven Fink and David Friedman Profit Sharing Plan and plaintiff Datz Pension and Profit Sharing Plan.
Harold G. Levison, New York City, for Director Defendants (Kasowitz, Benson, Torres & Friedman, attorneys).
Michael R. Griffinger, Newark, for Officer Defendants (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, attorneys).
Kevin R. Gardner, Roseland, for Defendant Public Service Electric & Gas Company and Public Service Enterprise Group Incorporated (Connell, Foley & Geiser, attorneys).
*256 WEISS, A.J.S.C.
At the January 23, 1998 status conference in the above referenced matter, the court advised counsel that it would consider the scope of discovery which plaintiffs are entitled to in order to respond to defendants' summary judgment motion filed December 30, 1997. The issue that arises from defendants' motion is the application of the business judgment rule to the directors' March 19, 1996 decision to reject plaintiffs' demand that Public Service Group Incorporated (Enterprise) and its wholly-owned subsidiary, Public Service Electric and Gas Company (PSE & G) (collectively referred to as Enterprise) commence litigation against certain officers and directors of the corporation.
In October, 1995, Plaintiff shareholders demanded that Enterprise commence litigation against their officers and directors alleging mismanagement of PSE & G's nuclear plants. Subsequent to the rejection of the demand, plaintiffs brought this suit against certain officers and directors of Enterprise and PSE & G. Defendants moved to dismiss for failure to state a claim upon which relief could be granted. On December 17, 1996, the Honorable Murray Simon, judge of the New Jersey Superior Court, Chancery Division, denied defendants' motion holding that plaintiffs' complaint sufficiently alleged particularized facts to create a reasonable doubt that (1) the directors were disinterested and (2) that the defendant's actions were a product of the business judgment rule. One year later defendants filed a motion for summary judgment to dismiss the complaint.
Because there is little or no New Jersey case law governing discovery in wrongful refusal cases, this court has reviewed case law in other jurisdictions which have set some guidelines on this issue.
It is well-settled that "directors, rather than shareholders, manage the business and affairs of the corporation." Matter of Prudential Ins. Co. Litig., 282 N.J.Super. 256, 270, 659 A.2d 961 (Ch.Div.1995); Casson v. Bosman, 137 N.J. Eq. 532, 45 A.2d 807 (E. & A.1946). The law requires that, prior to a shareholder derivative suit, a shareholder must demand that the board institute proceedings on behalf of the corporation, R. 4:32-5; Matter of Prudential Ins. Co. Ltg., supra at 268, 659 A.2d 961, and that shareholders must first show that the board refused to bring a suit on behalf of the corporation:
[T]he right of a stockholder to prosecute a suit on behalf of the corporation can only be maintained by showing a refusal, either actual or presumptive, by the board of directors to do so. And where there has been no actual refusal, the burden is on the stockholder who brings the suit to show the existence of such a state of facts as justifies the conclusion that an application to the board to prosecute would be futile.

[In re Prudential Ins. Co. Ltg., 282 N.J.Super. 256, 268, 659 A.2d 961 (Ch. Div.1995) quoting (Siegman v. Maloney, 65 N.J. Eq. 372, 273 [373] (E. & A.1903)) ]
It is also settled that a board's decision to reject the demand will not be overturned unless it is wrongful. Stepak v. Addison, 20 F. 3d 398, 402 (11th Cir.1994); Spiegel v. Buntrock, 571 A.2d 767, 775 (Del. 1990). "A board's refusal is only wrongful if it is not a valid exercise of its business judgment." Maul v. Kirkman, 270 N.J.Super. 596, 614, 637 A.2d 928 (App.Div.1994) (stating general rule as to business judgment protecting directors); Houle v. Low, 407 Mass. 810, 556 N.E.2d 51, 57 (Sup.Jud.Ct. 1990). There is a presumption under the business judgment rule that disinterested directors act "on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest." Grobow v. Perot, 539 A.2d 180, 187 (Del.1988). If the refusal to proceed with the litigation is protected by the business judgment rule, the shareholder may not continue the derivative proceeding. Aronson v. Lewis, 473 A.2d 805, 813 (Del.1984).
The rationale behind the business judgment rule is to encourage qualified men and women to serve as directors and to motivate them to be willing to take entrepreneurial risks. The duties of directors consist principally of establishing corporate policy, weighing major business decisions and overseeing management. The decisions directors are *257 asked to make may not be susceptible to right or wrong analysis at the time they are made. With hindsight, decisions may prove to have been wrong, but that does not necessarily mean a director's decision was wrong when made. Directors act for the owners of the corporation; they make the decisions that the owners would otherwise have to make. Unless they engage in conduct in which no reasonable owner would be likely to engage, the directors should not expect to be monetarily liable. No owner is likely to intentionally inflict harm on his businessan irrational act. See R. Franklin Balotti & James J. Hanks, Jr., Rejudging The Business Judgment Rule, 48 Bus. Law. 1342 (1993).
In order to be protected by the business judgment rule, the directors making a business decision must have become fully informed and acted in "good faith and in the honest belief that their actions are in the corporation's best interest." Grobow, supra, 539 A.2d at 187 (emphasis added). Thus, the court must determine whether the directors made a fully informed judgment when they rejected the shareholder's demand and that the rejection was in the best interests of the corporation.
The procedure followed by courts in other jurisdictions in shareholder's derivative actions have not been uniform. Under Delaware law, once a demand has been made and refused, the complaint must allege with sufficient specificity facts which, taken as true, create a reasonable doubt that the demand that was made and wrongfully refused was a result of a decision protected by the business judgment rule. Levine v. Smith, 591 A.2d 194 (Del.1991). Where a shareholder makes a demand on the board to commence litigation, that shareholder "tacitly concedes the independence of a majority of the board to respond. Therefore, when a board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation." Spiegel v. Buntrock, 571 A.2d 767, 777 (Del.1990).
Delaware courts have held that plaintiffs must show wrongful refusal in the pleadings without the benefits of discovery. Levine v. Smith, 591 A.2d 194 (Del.1991). However, the Delaware Supreme Court has determined that "[a] stockholder who makes a serious demand and receives only a peremptory refusal has the right to use the `tools at hand' to obtain the relevant corporate records, such as reports or minutes, reflecting the corporate action and related information in order to determine whether or not there is a basis to assert the demand was wrongfully refused." Grimes v. Donald, 673 A.2d 1207, 1218 (Del.1996).
When a majority of directors decide that they should not consider the demand either because too many of them are named as defendants or they may be interested parties, they may appoint a special litigation committee to investigate the demand. See Burks v. Lasker, 441 U.S. 471, 486, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979) (approving the use of special litigation committees as long as they were recognized by state law).[1]
Under Delaware law, where demand is excused, the corporation has the burden to demonstrate that the special litigation committee was independent, acted in good faith, and had a reasonable basis for its decision. Zapata Corp. v. Maldonado, 430 A.2d 779, 789 (Del.1981). If the corporation meets that burden, then the court, in its discretion, may apply its own business judgment in determining that the dismissal was in the best interests of the corporation or, alternatively, can choose to terminate the suit based on the fairness to the corporation. Id.
New York applies a more conservative approach than Delaware. New York courts use the "deferential business judgment rule approach," to reviewing the committee's reaction to a shareholder demand. This approach limits the court's review to the independence and disinterestedness of the committee and the appropriateness of the *258 procedures used in reaching its decision. See Auerbach v. Bennett, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994, 1002-03 (1979).
Responding to both Zapata and Auerbach, other jurisdictions have developed their own standards of review. North Carolina has adopted a "modified Zapata rule" for both demand-refused and demand-excused cases. In Alford v. Shaw, 320 N.C. 465, 358 S.E. 2d 323, 326 (1987), a case in which a special litigation committee had been formed, the Supreme Court of North Carolina held that
the court must make a fair assessment of the report of the special committee, along with all the other facts and circumstances in the case, in order to determine whether the defendants will be able to show that the transaction complained of was just and reasonable to the corporation.

[Id. 358 S.E.2d at 328.]
The Supreme Judicial Court of Massachusetts has developed yet another approach. Houle v. Low, 407 Mass. 810, 556 N.E.2d 51, supra. The court, agreeing with both Zapata and Auerbach, stated that "[a]t a minimum, a special litigation committee must be independent, unbiased, and act in good faith" while conducting a "thorough and careful analysis" of the shareholder's demand. Id. at 822, 556 N.E.2d 51. The court also held that the corporation has the burden of proving these requirements. Id. However, after recognizing the weaknesses in both the Zapata and Auerbach approaches, the Houle court held that in conducting its review the court must determine whether the committee reached "a reasonable and principled decision." Id. at 824, 556 N.E.2d 51. In addition, the court held that the reviewing court should look to the following factors identified by the American Law Institute (ALI): "(1) the likelihood of a judgment in plaintiff's favor; (2) the expected recovery as compared to out-of-pocket costs; (3) whether the corporation itself took corrective action; (4) whether the balance of corporate interests warrants dismissal; and (5) whether dismissal would allow any defendant who has control of the corporation to retain a significant improper benefit." Id. at 825, 556 N.E.2d 51.
The Court of Appeals of Tennessee in Lewis v. Boyd, 838 S.W.2d 215 (Tenn.Ct.App. 1992) agreed with the New York, Delaware, North Carolina and Massachusetts holdings that the court must first determine the independence and disinterestedness of the committee members. Id. at 224. However, the Lewis court went further and set forth the following factors courts should consider in determining the committee's independence and disinterestedness: "(1) the size of the committee; (2) the committee members' relationship with the corporation's officers and directors; (3) the committee members' qualifications and experience; (4) the scope of the committee's authority; and (5) the committee's autonomy from the directors, officers, and corporate counsel." Id.
The Tennessee court refused to follow Zapata in authorizing the court to substitute its own business judgment for that of the committee's. Id. Instead, the court held that the reviewing court should "critically evaluate the committee's findings and recommendations to determine whether they were made in good faith, whether they are supported by the record of the investigation, and whether they are consistent with the corporation's best interests as articulated by the special committee's report." Id. (emphasis added). The Lewis court also held that the reviewing court should examine the following:
(1) the length and scope of the investigation; (2) the committee's use of independent counsel or experts; (3) the corporation's or the defendants' involvement, if any, in the investigation; and (4) the adequacy and reliability of the information supplied to the committee.
In addition, the reviewing court must also consider whether the committee has reached a reasoned and principled decision by reviewing the following factors:
(1) the likelihood that the plaintiff will succeed on the merits; (2) the possible financial burden on the corporation compared with the litigation costs; (3) the extent to which dismissal will permit the defendants to retain improper benefits; and (4) the effect continuing the litigation will have on the corporation's business reputation and good will.

*259 [Id. at 224]
Furthermore, the court held that the corporation has the burden of proving the committee's independence and appropriateness of their decision. Id. at 225. Tennessee would apply its decision to both demand made/demand refused and demand excused cases.
Federal courts have not developed a uniform procedure for determining shareholders' claims of wrongful refusal. See Note, Discovery in Federal Demand-Refused Derivative Litigation, 105 HARV. L. REV. 1025, 1028 (1992). Some courts require plaintiffs to show wrongful refusal solely through the pleadings, without the benefit of discovery. See Lewis v. Hilton, 648 F.Supp. 725, 727 (N.D.Ill.1986); Allison v. General Motors Corp., 604 F.Supp. 1106, 1119 (D.Del.), aff'd, 782 F.2d 1026 (3d Cir.1985). Other federal courts, determining the wrongful refusal claim on the corporation's motion for summary judgment, permit plaintiffs to plead without a high degree of specificity and grant plaintiffs the opportunity to obtain the relevant discovery. See In re Consumers Power Co., 132 F.R.D. 455, 460 (E.D.Mich. 1990); Abrams v. Koether, 766 F.Supp. 237 (D.N.J.1991) (applying the summary judgment standard simply because the corporation moved for dismissal pursuant to Rule 56). Some federal courts have also limited discovery to the issue of the directors' good faith in their exercise of business judgment to seek dismissal. See Galef v. Alexander, 615 F.2d 51, 56 (2d Cir.1980); Maldonado v. Flynn, 485 F.Supp. 274, 282 n. 28 (S.D.N.Y. 1980), aff'd in part, rev'd in part, 671 F.2d 729 (2d Cir.1982).
One commentator has suggested that federal courts should allow plaintiffs to conduct discovery only on issues relevant to the wrongful refusal claim. See Note, supra, at 1309. The article further observed that:
Plaintiffs should be allowed to seek discovery aimed at elucidating the investigatory methods employed by the directors and the circumstances surrounding the directors' decision to terminate the action. However, courts should not allow plaintiffs access to information discovered during the corporation's investigation that is unrelated to the wrongful refusal issue. [citations omitted]. After this limited discovery has been completed, courts should entertain a corporation's motion for summary judgment and determine whether the corporation wrongfully refused a shareholder's demand.

[Id.]
The American Bar Association in its Model Business Corporation Act (MCBA) has also proposed a standard to review a board or committee's decision to reject shareholder's demand. See Model Business Corp. Act § 7.44 official cmt. (1991). Pursuant to the MCBA, the court shall dismiss the derivative suit if the board or committee determined in good faith after conducting a reasonable investigation that the derivative proceeding is not in the best interests of the corporation. Id. § 7.44(a). The section does not permit the court to review the decision but instead limits the court's review to "whether the determination has some support in the findings in the inquiry." Id. § 7.44 official cmt. at 208. The shareholder must assert that the majority of the decision makers were not independent. Id. § 7.44(d). If a majority of the board that rejected the demand was independent, then the plaintiff must establish the lack of good faith and reasonableness of the decision. Id. § 7.44(e). Conversely, if the majority is found to be not independent, then the corporation must demonstrate management's good faith and reasonableness.
Under the American Law Institute's (ALI) Principle of Corporate Governance approach, judicial review depends upon the gravity of the plaintiff's underlying action. 2 American L. Inst. Principles of Corporate Governance: Analysis and Recommendation § 704 (1994) (hereinafter ALI Final Draft). Where the wrongdoing is more serious, the allegations that the rejection was unreasonable or could not be protected by the business judgment rule need not be very particularized. Id. § 7.04 cmt. d. If the gravamen of the complaint is that the corporation breached the duty of care, then the committee's recommendation to terminate the litigation is given the benefit of the business judgment rule. Id. § 7.10(a)(1). On the other hand, if it is alleged that the corporation breached the duty of fair dealing, then the court determines *260 whether the committee was "adequately informed" and "reasonably determined" that dismissal was in the best interests of the corporation. Id. § 7.10(a)(2).
Another commentator has suggested that subsequent to the board filing a motion for summary judgment, "the shareholder must be prepared to establish, through deposition testimony, affidavits and documents, that genuine issues of material fact exist which must be resolved at trial." See Craig W. Palm & Mark A. Kearney, A Primer on the Basics of Directors' Duties in Delaware: The Rules of the Game (Part I), 40 Vill. L.Rev. 1297, 1361 (1995).
Many commentators have questioned the current approaches to the problem of judicial monitoring of stockholder derivative actions. The continuation of the futility exception to shareholder demand has been criticized. ALI Final Draft, supra note 9, § 7.03 cmt d. at 653; John C. Coffee, Jr., New Myths and Old Realities: The American law Institute Faces the Derivative Action, 48 Bus. Law. 1407 (1993); Carol B. Swanson, Juggling Shareholder Rights and Strike Suits in Derivative Litigation: The ALI Drops the Ball, 77 Minn. L.Rev. 1339, 1386 (1993). Requiring universal demand would place the burden of responding upon the board of directors, where it belongs, and would remove from the courts the necessity of engaging in a tortured inquiry of whether demand is excused. Courts would then be in a position to properly apply the business judgment rule to the action of the board of directors or any special litigation committee appointed to review and act upon a shareholder's demand.
A concomitant to a universal demand rule would be to require the corporation to justify its refusal of a shareholder's demand, i.e. whether the directors or committee reached "a reasonable and principled decision." Houle v. Low, at 824, 556 N.E.2d 51. By requiring justification of its refusal of a shareholder's demand, the "structural bias" arising from the perception that directors may be consciously or unconsciously favoring their colleagues will be dissipated. The preparation of a submission setting forth the justification for the determination not to proceed with a claim will enable the court to determine if the action satisfies the business judgment rule. Such a decision by the court would not involve a substitution of the exercise of business judgment by the directors or a committee, but would enable the court to better judge the action taken in light of the charges alleged by the shareholder.
Placing the burden of proof on the corporation is both logical and consistent with the responsibility that courts have in this area. It is the corporate directors and management which have the necessary facts and information upon which the decision to discontinue the derivative litigation is based. It is the corporation which conducts the investigation and assembles the necessary facts upon which it acts. Placing the burden upon the corporation to establish that the group which recommended against derivative litigation acted reasonably, in good faith and in a disinterested manner is not unduly burdensome. The court would be able to consider the evidence put before it in determining whether the corporation met its burden without substituting its business judgment for that of the directors or special litigation committee. So long as the corporation met its burden of proof that the decision makers were disinterested, exercised due care in the decision making process, acted in good faith and that their decision was just and reasonable to the corporation, courts would have to dismiss the derivative litigation.
This court finds that the criticism directed towards the Delaware and New York approaches to derivative actions is well founded. Requiring shareholders to allege facts with specificity without discovery places them in a position bordering on the impossible. The decisions by the Massachusetts and North Carolina courts represent a sounder approach to the problems of shareholder derivative actions. The decisions by those courts that the corporation bears the burden of establishing the decision makers independence, lack of bias, good faith and thoroughness of its investigation is fair and just. Even if the corporation shows that the committee's process was fair, the court still must determine whether the committee reached a reasonable and principle decision. Thus, the Massachusetts court in Houle v. Low, supra, *261 although it does not allow the court to substitute its own business judgment for that of the directors or special litigation committee, the review by the court of the decision not to proceed with any claim against management does involve an evaluation of the substantive merits of plaintiff's allegations. The adoption of a modified business judgment rule, the key feature being that the corporation, not the shareholder, would have to meet an initial burden of proof is more consistent with the realities of shareholder-corporate existence. Courts would have to dismiss a shareholder derivative suit in accordance with management's recommendation so long as the corporation could establish the decision maker acted reasonably, in good faith, and in a disinterested fashion. The suggested standard would not permit the court to substitute its own business judgment for that of management. In determining whether the corporation has met its burden, the court would be able to consider all relevant justifications for management's determination, including the seriousness and weight of the plaintiff's allegations. This rule would protect corporate management by disallowing judicial intrusion into the substantive allegations except to the minimal extent necessary for the corporation to meet its burden.
Placing the burden upon the corporation makes good sense. After all, corporate management possess all the relevant information and facts surrounding the determination to discontinue the derivative litigation. Corporations could more easily show the reasonableness of its decision maker's determination in the face of mere allegations of corporate mismanagement implicating duty of care. The corporation should be able to present the requisite showing in a cost effective manner. In response to a shareholder's demand, the corporation will presumably conduct a reasonable inquiry assembling relevant underlying facts. Moreover, the standards of good faith and reasonableness are quite low and should be readily met. Given the general judicial reluctance to meddle in the corporate sphere, this proposed standard should not overly concern corporate practitioners.
Defendants have filed their motion for summary judgment and presently assert that there are no genuine issues of material fact as to the good faith and reasonableness of the board's decision to refuse to institute litigation and, thus, summary judgment must be granted. Based on the court's decision to adopt a modified business judgment rule in line with the highest courts of Massachusetts and North Carolina, plaintiffs are entitled to discovery on the issues of the board's disinterestedness, Matter of Prudential Ins. Co. Litig., 282 N.J.Super. at 276, 659 A.2d 961, good faith, due care in its investigation and the reasonableness of its decision. Under the summary judgment standard of Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995), plaintiffs must establish that a material genuine issue of fact exists as to the nature of the investigation, the good faith or reasonableness of the board's decision in order to defeat defendants' motion for summary judgment under the business judgment rule.
The Court finds that discovery should be limited to the narrow issue of what steps the directors took to inform themselves of the shareholder demand and the reasonableness of its decision. Furthermore, the court directs that discovery should be made available from the time the demand was made. Any discovery which relates to actions that occurred prior to the demand would go to the merits of the litigation, and not this narrow issue. Plaintiffs may not have discovery on the merits of their claim nor may they require defendants to produce documents which were utilized in making the decisions which resulted in alleged mismanagement. Plaintiffs' discovery is to be limited and focused in order to meet defendants' motion for summary judgment.
The court therefore determines that the relevant discovery to be taken is as follows: (1) plaintiffs should have the opportunity to take the depositions of all the directors and officers who were on the board when the demand was refused; (2) plaintiffs should have access to the minutes of any meetings in which the decision to either proceed with the litigation or reject the demand was discussed; and (3) defendants are required to *262 produce any documents which were generated to inform the directors upon which they based their decision to reject the demand.
NOTES
[1] In this case, the defendants did not appoint a special litigation committee to review the demand. Thus, the court need not determine whether the use of these committees are permissible under New Jersey law. For the reasons set forth later in this opinion, the court, however, does not differentiate between cases where a shareholder litigation committee investigated the demand and cases in which demand was refused by the board.