NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1241-15T2

PAUL MEMO, derivatively
on behalf of PRUDENTIAL
FINANCIAL, INC.,

 Plaintiffs-Appellants,

v.

JOHN R. STRANGFELD, JR.,
RICHARD J. CARBONE, PETER
B. SAYRE, THOMAS J. BALTIMORE,
JR., GORDON M. BETHUNE, GASTON
CAPERTON, GILBERT F. CASELLAS,
JAMES G. CULLEN, MARK B. GRIER,
CONSTANCE J. HORNER, MARTINA
HUND-MEJEAN, KARL J. KRAPEK,
CHRISTINE A. POON, JAMES A.
UNRUH and JON F. HANSON,

 Defendants-Respondents,

and

PRUDENTIAL FINANCIAL, INC.,

 Defendant.
________________________________________________

 Submitted March 7, 2017 – Decided August 21, 2017

 Before Judges Messano, Espinosa and Suter.
 On appeal from the Superior Court of New
 Jersey, Chancery Division, Essex County,
 Docket No. C-191-13.

 Kantrowitz, Goldhamer & Graifman, PC and The
 Weisier Law Firm, PC, attorneys for appellants
 (Gary S. Graifman, on the brief).

 Wong Fleming, and Edwin G. Schallert
 (Debevoise & Plimpton, LLP) of the New York
 Bar, admitted pro hac vice, attorneys for
 respondents (Daniel C. Fleming, on the brief;
 Mr. Schallet, of counsel and on the brief).

PER CURIAM

 This appeal requires us to consider application of the

business judgment rule, which "is embedded in American corporate

law[,] . . . [and] 'protects a board of directors from being

questioned or second-guessed on conduct of corporate affairs

except in instances of fraud, self-dealing, or unconscionable

conduct.'" In re PSE & G S'holder Litig., 173 N.J. 258, 276-77

(2002) (quoting Maul v. Kirkman, 270 N.J. Super. 596, 614 (App.

Div. 1994)). "One recognized infringement on director autonomy

is [a] shareholder-derivative action." Id. at 277; N.J.S.A. 14A:3-

6.2. Before commencing such an action, the plaintiff must serve

"a written demand . . . upon the corporation to take suitable

action." N.J.S.A. 14A:3-6.3(a); see also R. 4:32-3 (setting forth

prerequisites for filing a shareholder derivative complaint,

including pre-suit demand by a plaintiff for the "desired" "action"

by "managing directors or trustees").

 2 A-1241-15T2
 In response to such a demand, the defendant managing directors

and board members "may appoint a special litigation committee

[(SLC)] to investigate whether the suit is in the best interest

of the corporation." PSE & G, supra, 173 N.J. at 283 (citing

Zapata Corp. v. Maldonado, 430 A.2d 779, 786 (Del. 1981). "Based

on the committee's findings, the corporation may move for dismissal

of the suit, although the corporation has the burden of proving

the 'independence,' 'good faith,' and 'reasonableness' of the

committee's investigation." Ibid. (quoting Zapata, supra, 430

A.2d at 788). Regardless whether an SLC is formed or not, our

Court has adopted

 a modified business judgment rule that imposes
 an initial burden on a corporation to
 demonstrate that in deciding to reject or
 terminate a shareholder's suit the members of
 the board (1) were independent and
 disinterested, (2) acted in good faith and
 with due care in their investigation of the
 shareholder's allegations, and that (3) the
 board's decision was reasonable. All three
 elements must be satisfied.

 [Id. (emphasis added) (citing In re PSE & G
 S'holder Litig., 315 N.J. Super. 323, 335 (Ch.
 Div. 1998)).]

 In 2012, plaintiff Paul Memo, a shareholder of Prudential

Financial, Inc. (Prudential), sent a pre-suit demand letter to

John R. Strangfeld, Jr., Chairman of Prudential's Board of

Directors (the Board) and its Chief Executive Officer (CEO),

 3 A-1241-15T2
asserting Prudential's management had breached their fiduciary

duties. Plaintiff demanded the Board commence an independent

internal investigation and bring a civil action against members

of its management team. On March 12, 2013, the Board appointed

three of its members to a "special evaluation committee" (SLC) to

investigate plaintiff's allegations. The SLC interviewed two law

firms, and chose Day Pitney, LLP (Day Pitney), to serve as its

counsel.

 On September 10, 2013, plaintiff filed a shareholder

derivative action against Strangfeld, Richard J. Carbone,

Prudential's Chief Financial Officer (CFO), Peter B. Sayre, its

Principal Accounting Officer, and directors Thomas J. Baltimore,

Jr., Gordon M. Bethune, Gaston Caperton, Gilbert F. Casellas,

James G. Cullen, Mark B. Grier, Constance J. Horner, Martina Hund-

Mejean, Karl J. Krapek, Christine A. Poon, James A. Unruh and Jon

F. Hanson (collectively, defendants). Among other things,

plaintiff asserted ten months had passed since he served the demand

letter without any substantive response. Plaintiff further

claimed the Board's inaction was a functional refusal of his demand

and defendants breached their fiduciary duties to Prudential's

shareholders.

 Day Pitney notified plaintiff's counsel of the ongoing

investigation. On March 24, 2014, the SLC issued its report.

 4 A-1241-15T2
Shortly thereafter, defendants moved to dismiss the complaint

pursuant to Rule 4:6-2(e), but the court permitted limited

discovery before ruling on the motion. See PSE & G, supra, 173

N.J. at 286 (permitting access to corporate records and discovery

"limited to the narrow issue of what steps the directors took to

inform themselves of the . . . demand and the reasonableness of

its decision" (quoting PSE & G, supra, 315 N.J. Super. at 337)).

In April 2015, plaintiff filed opposition to defendants' motion.

 After considering oral argument, Judge Thomas Moore granted

defendants' motion for reasons placed on the record in a

comprehensive oral opinion. Judge Moore's October 6, 2015 order

dismissed plaintiff's complaint with prejudice, and this appeal

followed.

 Plaintiff contends there were material factual disputes

regarding the independence of the SLC members, particularly in

light of a Day Pitney memo dated the same day the SLC issued its

report. Plaintiff also argues Judge Moore erred in concluding as

a matter of law that Day Pitney acted independently and the SLC's

investigation was reasonable. Having considered these arguments

in light of the record and applicable legal standards, we affirm.

 I.

 We briefly summarize some background to place plaintiff's

claims in proper context.

 5 A-1241-15T2
 Prudential provided financial management services and sold

various investment products to the public, including life

insurance policies and annuity contracts. In 2009, Verus

Financial, LLC (Verus) notified the company that it would be

examining Prudential's unclaimed property practices and compliance

procedures on behalf of thirteen states.1 In public filings,

Prudential acknowledged the "audit may result in additional

payments of abandoned funds to [United States] jurisdictions and

to changes in the Company's practices and procedures for the

identification of escheatable funds, which could impact claim

payments and reserves, among other consequences."

 In June 2011, the Board held a meeting that was attended by

three members of the subsequently-formed SLC, during which the

directors were given updates on the progress of the Verus audit.

In November 2011, Prudential issued a press release announcing it

increased its reserves by an additional $139 million, the lion's

share of which was an acknowledgment of the company's decision to

change its procedures for identifying deceased policy and contract

holders, and the potential liability that might result. In

December 2011, Prudential entered into a Global Resolution

Agreement (GRA) with Verus, adopting modifications to its business

1
 The number of states continued to grow over ensuing years to a
total of thirty-three.

 6 A-1241-15T2
practices and requiring Prudential to "identify and locate the

beneficiaries" of all "policies and contracts active at any time

since January 1, 1992 through December 31, 2010." Under the GRA,

if a beneficiary could not be located, Prudential would remit all

proceeds to the particular jurisdiction as unclaimed property

subject to escheat.

 Plaintiff claimed Prudential inappropriately held unclaimed

property, resulting in the company posting stronger earnings than

it should have. The disclosure of these irregularities resulted

in significant decreases in the stock price.

 Three directors, Baltimore, Hund-Mejean and Poon, comprised

the SLC, with Poon elected as chair. All had extensive business

experience, were more recent additions to the Board and had no

direct involvement with managing the company. Each member

completed a questionnaire consisting of twenty-five questions.

The SLC report described a number of factors intended to ensure

the committee's members were independent and personally

disinterested in plaintiff's complaint.

 The SLC concluded Prudential should take all appropriate

actions to dismiss plaintiff's complaint, stating:

 Contrary to the claims in the Shareholder
 Letter and Shareholder Complaint, the SLC
 found that the Board and executive officers
 acted on an informed basis, with the input and
 advice of competent advisors, and in the good

 7 A-1241-15T2
 faith belief they were acting in the best
 interests of the corporation and its
 shareholders, generally and with respect to
 the periodic financial reports at issue. It
 found there existed reasonable systems for the
 flow of information to the Board and senior
 management, including with respect to the
 claims asserted in this matter. It found no
 evidence that the Board acted in other than
 good faith and in the best interests of the
 corporation and its shareholders, or that it
 consciously failed to oversee the operations
 of the Company or disregarded any red flags.

 II.

 Defendants moved to dismiss plaintiff's complaint for failure

to state a claim for relief, Rule 4:6-2(e). The Rule plainly

provides:

 If, on a motion to dismiss based on the defense
 numbered (e), matters outside the pleading are
 presented to and not excluded by the court,
 the motion shall be treated as one for summary
 judgment and disposed of as provided by R.
 4:46, and all parties shall be given
 reasonable opportunity to present all material
 pertinent to such a motion.

 [R. 4:6-2.]

In this case, after limited discovery regarding the appointment

of the SLC, its counsel and its investigation, Judge Moore

considered the issues presented by applying the standards set

forth in Rule 4:46.

 We consider the grant of summary judgment de novo, using the

"same standard as the motion judge." Globe Motor Co. v. Igdalev,

 8 A-1241-15T2
225 N.J. 469, 479 (2016) (quoting Bhagat v. Bhagat, 217 N.J. 22,

38 (2014)).

 That standard mandates that summary judgment
 be granted "if the pleadings, depositions,
 answers to interrogatories and admissions on
 file, together with the affidavits, if any,
 show that there is no genuine issue as to any
 material fact challenged and that the moving
 party is entitled to a judgment or order as a
 matter of law."

 [Templo Fuente De Vida Corp. v. Nat'l Union
 Fire Ins. Co., 224 N.J. 189, 199 (2016)
 (quoting R. 4:46-2(c)).]

Our "task is to determine whether a rational factfinder could

resolve the alleged disputed issue in favor of the non-moving

party." Perez v. Professionally Green, LLC, 215 N.J. 388, 405-06

(2013).

 An opposing party must "do more than 'point[] to any fact in

dispute' in order to defeat summary judgment." Globe Motor Co.,

supra, 225 N.J. at 479 (quoting Brill v. Guardian Life Ins. Co.

of Am., 142 N.J. 520, 529 (1995)). If the opposing party

 offers . . . only facts which are immaterial
 or of an insubstantial nature, a mere
 scintilla, "fanciful, frivolous, gauzy or
 merely suspicious," he will not be heard to
 complain if the court grants summary judgment,
 taking as true the statement of uncontradicted
 facts in the papers relied upon by the moving
 party, such papers themselves not otherwise
 showing the existence of an issue of material
 fact.

 9 A-1241-15T2
 [Id. at 480 (quoting Brill, supra, 142 N.J.
 at 529) (quoting Judson v. Peoples Bank &
 Trust Co., 17 N.J. 67, 75 (1954)).]

Our review is limited to the record before Judge Moore. Lombardi

v. Masso, 207 N.J. 517, 542 (2011).

 We also review the trial court's decision to dismiss

plaintiff's complaint under the modified business judgment rule

de novo. PSE & G, supra, 173 N.J. at 287. Because defendants

bear the burden of proof, we "must view the record with all

legitimate inferences drawn in the [plaintiff]'s favor and decide

whether a reasonable factfinder could determine that the

[defendants] ha[ve] not met [their] burden of proof." Globe Motor,

supra, 225 N.J. at 481. In other words, we must decide whether

"the evidence is so one-sided that . . . [defendants] . . . must

prevail as a matter of law." Brill, supra, 142 N.J. at 540

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106

S. Ct. 2505, 2512, 91 L. Ed. 2d 202, 214 (1986)).

 We review issues of law de novo and accord no deference to

the trial judge's legal conclusions. Nicholas v. Mynster, 213

N.J. 463, 478 (2013). In this regard, we note that shortly after

the SLC was formed in this case, on April 1, 2013, the Legislature

enacted N.J.S.A. 14A:3-6.5, which "details various alternative

procedures for the corporation to make an independent decision as

to whether the derivative proceeding is in the best interests of

 10 A-1241-15T2
the corporation." Assembly Commerce and Economic Development

Committee, Statement to A. 3123 (September 24, 2012); Senate

Commerce Committee, Statement to A. 3123 (January 14, 2013).

 N.J.S.A. 14A:3-6.5 permits a corporation, prior to seeking

dismissal of a shareholder derivative action, to form a "committee

. . . of one or more independent directors appointed by a majority

vote of independent directors[,]" N.J.S.A. 14A:3-6.5(2)(b), and

defines who is an independent director. N.J.S.A. 14A:3-6.5(7).

The statute further provides that

 a derivative proceeding shall be dismissed by
 the court on motion by the corporation if the
 court finds that . . . [such a committee] has
 determined in good faith, after conducting a
 reasonable inquiry upon which its conclusions
 are based, that the maintenance of the
 derivative proceeding is not in the best
 interests of the corporation[.]

 [N.J.S.A. 14A:3-6.5(1)(a).]

Importantly, if the corporation follows such procedures, in

certain circumstances, the statute shifts the burden of proof to

the plaintiff. N.J.S.A. 14A:3-6.5(4) and (6).

 In this case, neither party argued the statute applied, nor

did Judge Moore discuss the statute. Neither party has cited the

statute in its appellate brief. We assume, therefore, that it

does not apply.

 11 A-1241-15T2
 Moreover, for the present, we are bound by the Court's

guidance as to how we should consider the impact, if any, that the

formation of an SLC and its subsequent report to the Board has

upon the modified business judgment standard. Although the issue

was not squarely before it in PSE & G, supra, the Court said, "as

a general framework for analysis, we will 'not differentiate

between cases where a shareholder litigation committee

investigated the demand and cases in which demand was refused by

the board.'" 173 N.J. at 283 (quoting, PSE & G, supra, 315 N.J.

Super. at 329 n.1). As a court of intermediate appellate

jurisdiction, we defer to the Court's authority to adopt a

different standard, particularly in light of the enactment of

N.J.S.A. 14A:3-6.5. Riley v. Keenan, 406 N.J. Super. 281, 297

(App. Div.), certif. denied, 200 N.J. 207 (2009).

 III.

 We provide some additional context as we consider plaintiff's

specific arguments.

 In its report, the SLC detailed the selection process for its

three members, which took into account, among other things: the

SLC members' positions on the Board and Audit Committees, the

"lack of any personal financial gain distinct from other

shareholders from the activities alleged in the Shareholder Letter

and Shareholder Complaint," the lack of personal interest in the

 12 A-1241-15T2
litigation and the lack of personal liability for the alleged

activities. Counsel for the SLC reviewed additional information

regarding relationships between SLC members, their families and

affiliated organization, and Prudential, other directors and

senior management.

 The questionnaires completed by the SLC members contained two

questions that focused on whether the member was involved in any

discussions, prior to November 2011, as members of the "Audit

Committee or Corporate Governance and Business Ethics Committee,"

regarding the company's treatment of unclaimed death benefits,

escheatment and establishment of reserves (question 24), or

whether the member was involved in the approval or review of

Prudential's response to Verus' audits (question 25). All three

SLC members answered in the negative. Day Pitney conducted face-

to-face interviews with Hund-Mejean and Baltimore, but not Poon.

 On March 24, 2014, the day the SLC filed its report, a Day

Pitney intra-office memorandum indicated that during the

investigation, SLC members "became aware of materials and

information" showing "the Board . . . and the Audit Committee

received updates from management regarding . . . the . . .

Company's response to the Verus audit." The memo specifically

cited questions 24 and 25 of the questionnaire, and stated "the

 13 A-1241-15T2
SLC members affirmatively wish to update their responses . . . to

acknowledge and reflect these developments."

 All three members of the SLC were deposed. Under oath, Poon

specifically stated she did not want to update her answers on the

questionnaire. In her deposition, Hund-Mejean reiterated her

answers to questions 24 and 25. Baltimore testified in a manner

that was consistent with the answers on his questionnaire.

 Plaintiff argues the Day Pitney memo raises a genuine material

factual dispute about the members' knowledge of and involvement

in Prudential's practices and response to the Verus audit as it

was ongoing, which should have foreclosed summary judgment on the

critical issue of whether the SLC was "independent." We disagree.

 "Directorial independence 'means that a director's decision

is based on the corporate merits of the subject before the board

rather than extraneous consideration or influences.'" PSE & G,

supra, 173 N.J. at 290 (quoting In re Prudential Ins. Co.

Derivative Litig., 282 N.J. Super. 256, 276 (Ch. Div. 1995)).

Judge Moore accepted the commonsense notion that as members of the

Board, each SLC member would have received some information about

the audit as it was ongoing. The judge focused on the deposition

testimony of the three SLC members, which was unequivocal. We

agree that the Day Pitney memorandum, standing alone, does not

raise a material factual dispute about the knowledge each SLC

 14 A-1241-15T2
member possessed, or the actions or inactions they took as Board

members, and therefore does not raise a material factual dispute

about the SLC's independence and disinterestedness.

 Plaintiff next contends material facts regarding Day Pitney's

independence foreclosed the conclusion that it acted independently

in providing counsel to the SLC. Specifically, plaintiff argues

the law firm had previously represented a Board member, Krapek,

in unrelated litigation, and it represented another corporation

of which Poon served as a director.

 Plaintiff's claims rest upon a table prepared by Day Pitney

indicating its representation between January 1, 2010 and March

24, 2014, the date the SLC report was issued, of "Entities

Associated With Individual Defendants" named in this litigation.

In five instances, Day Pitney represented a client with which

Krapek had some affiliation. It was apparently undisputed that

the firm had earned more than $300,000 in fees for these

representations, some of which ended before the SLC was formed,

but that was a minute percentage of the firm's gross revenues.

 Poon appeared as an associated defendant with respect to one

Day Pitney client.2 However, when specifically questioned at

2
 The chart listed three entities in one line item.

 15 A-1241-15T2
deposition about her directorship with the listed entities, Poon's

answers were unclear.3

3
 The Day Pitney conflicts list included "Philips Electronics" as
the entity with which Poon was affiliated. At deposition, she was
asked about her membership on corporate boards, and responded:

 Q: And which boards might those be?

 A: I am a director of the public board called
 Regeneron.

 Q: Okay.

 A: I'm a director of the public board that's
 called Philips.

 . . . .

 Q: Okay. And with regard to Philips, would
 that be Philips Electric?

 A: Yes. Electronics.

 Q: I'm sorry. Electronics.

 A: Royal Philips is —

 Q: Okay. Royal Philips. And is there another
 name that begins with a K that's probably too
 long for me to say? Something like
 Koinklijke?

 A: Yes.

 Q: And there are also I believe some
 subsidiaries that you're affiliated with of
 Philips; is that correct?

 A: That's not correct.

 16 A-1241-15T2
 Judge Moore concluded Day Pitney's prior representation of

entities with which Krapek and Poon had some affiliation did not

raise a genuine factual dispute about the law firm's independence.

He cited In re Par Pharmaceutical, Inc. Derivative Litigation, 750

F. Supp. 641, 647 (S.D.N.Y. 1990), where the court held that an

SLC must be represented by independent counsel. However, as Judge

Moore noted, in that case, the same firm represented both the SLC

and the corporation. Id. at 644.

 Before us, plaintiff relies upon a portion of Justice Stein's

concurring opinion in PSE & G, supra, 173 N.J. at 298-300, which

discussed the importance of an SLC having independent counsel.

However, there too, the law firm conducting the investigation of

the plaintiffs' claim had previously represented the corporation

in seeking an extension to respond to the complaint. Id. at 299-

300.

 Plaintiff cites to no other authority for the proposition

that Day Pitney's representation of entities with which Krapek and

Poon had some affiliation raised a material factual dispute

regarding the independence of the firm's investigation of the

complaint and the advice and counsel it rendered to the SLC.

 Plaintiff also argues genuine material factual disputes exist

regarding the reasonableness of the SLC's investigation.

Specifically, he contends the SLC failed to conduct interviews of

 17 A-1241-15T2
key witnesses and never considered in its investigation the impact

of another class action securities fraud complaint made against

Prudential (the securities action). Defendants contend these

issues were never raised before Judge Moore, and we agree that his

oral decision does not specifically address these claims.

Nonetheless, we conclude plaintiff's arguments lack any merit.

 The Court described how we should consider whether the company

conducted a reasonable investigation. "[T]he court's inquiry is

not into the substantive decision of the board, but rather is into

the procedures employed by the board in making its determination."

PSE & G, supra, 173 N.J. at 291 (citation omitted). "In that

regard, there is 'no prescribed procedure that a board must

follow.'" Id. at 291-92 (quoting Levine v. Smith, 591 A.2d 194,

214 (Del. 1991), overruled on other grounds, Brehm v. Eisner, 746

A.2d 244 (Del. 2000)). "Nonetheless, the process should be such

that a reviewing court can look to it and conclude confidently

that it reflects a corporation's earnest attempt to investigate a

shareholder's complaint." Id. at 292. "Stated differently, the

inquiry is whether the 'investigation has been so restricted in

scope, so shallow in execution, or otherwise so pro forma or half

hearted as to constitute a pretext or sham[.]'" Ibid. (quoting

Stoner v. Walsh, 772 F. Supp. 790, 806 (S.D.N.Y. 1991) (internal

quotation marks and citation omitted)).

 18 A-1241-15T2
 Plaintiff contends the SLC failed to interview Mark Grier,

Prudential's Vice-Chairman who admittedly was responsible for a

wide variety of corporate functions. The federal district court

denied Prudential's motion to dismiss the complaint in the

securities action that named Grier as a defendant. Plaintiff also

contends the SLC failed to interview Verus or any government entity

affected by Prudential's practices during the relevant period.

 The Court has recognized that "[o]ne of a board's prerogatives

. . . is 'to entrust its investigation to a law firm[.]'" PSE &

G, supra, 173 N.J. at 292 (quoting Stepak v. Addison, 20 F.3d 398,

405 (11th Cir. 1994)). In City of Orlando Police Pension Fund v.

Page, 970 F. Supp. 2d 1022 (N.D. Cal. 2013), the court said:

 [T]he [SLC] committee was not obligated to
 interview every potential witness identified
 by plaintiff (or any witnesses at all), nor
 does it suggest that plaintiff is somehow
 relieved of its burden to show that the un-
 interviewed individuals "had knowledge that
 was unique and unobtainable without those
 interviews, and how those interviews if taken
 would have altered the board's decision to
 refuse demand."

 [Id. at 1032 (quoting Copeland v. Lane, No.
 5:11-cv-01058 EJD, 2012 U.S. Dist. LEXIS
 146815 (N.D. Cal. Oct. 10, 2012)).]

The SLC's report details the process employed to investigate

plaintiff's claims. In part, Day Pitney reviewed more than eleven

million pages of documents and interviewed twenty-nine witnesses.

 19 A-1241-15T2
Those interviewed included "current and former employees,

officers, and members of the Board[;] [m]ultiple members of senior

management . . . , as well as employees involved in the Company's

disclosure process[,] and . . . representatives of multiple Board

Committees." We can conclude with confidence that the

investigation conducted by the SLC "reflects a corporation's

earnest attempt to investigate a shareholder's complaint."

PSE & G, supra, 173 N.J. at 292.

 Plaintiff's final contention, that the SLC did not consider

the securities action in reaching its conclusion, lacks sufficient

merit to warrant discussion. R. 2:11-3(e)(1)(E). The SLC report

actually cites other contemporaneously filed litigation against

Prudential and other insurance companies regarding alleged

failures to properly investigate deaths of policy holders.

 Affirmed.

 20 A-1241-15T2